Good morning, your honors. May it please the court. Kurt Hermanson on behalf of Mr. Banuelos. This is a 1326 case where Mr. Banuelos was convicted. He actually pled guilty to illegal entry and in the guilty plea reserved his right to appeal whether or not his prior deportation and removals were valid. This court should hold that both the 2002 and 2005 removals were invalid because he was removed based on charges that are not aggravated felonies. The government argues that there's harmless error because there was an aggravated felony that he had in 2005 which was never charged. Well, let's leave that aside for now. And what about the 2002 removal? Why was that? Under our case law, isn't the crime for which he was removed an aggravated felony? It's not. It's not? It's not. There were four charges in the 2002 notice to appear. One of which was the one that they rely on is the receipt of stolen property. Right. So all of... And it's not Verdugo-Gonzalez-Hall that that is an aggravated felony? It does. All right. So what? So all of the other charges, as the government concedes in government brief, page 8, footnote 3, fall away. Well, whether they fall away or not, they're not relying on them. So let's just do this one. So that case is not binding on this court. Under Miller v. Gammie, that case is irreconcilable with subsequent Supreme Court decision in, I don't know how to pronounce it, Malawi. So, and as... That's not... I mean, we're pretty tough about what's irreconcilable in terms of our on-bank precedents and what needs to go on bank to be reconciled. And I'm not sure that this doesn't fall within the second category, i.e., there may be tension, but is it irreconcilable? It is irreconcilable because in that case, as the Fourth Circuit found in the Menya case in 2016, relying on Malawi, that it makes scant sense, no sense at all, for someone who's convicted of theft in California, of stealing $10,000 to not be removable, but someone else who receives the stolen $10,000 to be removable. So that's... But what about the alternative argument that stolen is a different term than theft and stolen does include all forms of illegal deprivation, including consensual? So that argument is foreclosed by this court's on-bank decision in Corona-Sanchez and based on the just straightforward statutory interpretation of 1101-843-G. Because when you put in parentheticals, including, that means it's included in. Tell me how Corona-Sanchez deals with that. I don't remember reading that in your brief. Corona-Sanchez is where the on-bank court looked at in depth in 2002 at California's theft statutes and found that California theft statutes don't... I know, but did you look at the stolen receipt of stolen property? No, the charge was... That's not pertinent to my question. It is... Well, the reason I bring it up is because there's an in-depth analysis of what theft is in California and receiving stolen property for it to be a theft offense has to include... The generic offense requires that you receive it without consent. So if it's in... Well, that's the question. It's in parentheses, right? It says including receipt of stolen property. So the question is whether that... I understand it's a sensible argument to say that it's asked to also be theft, but it isn't, in fact, theft to receive stolen property. So the parentheses is in some ways not included. It's only adding on, really. And what is it adding on is the question. I mean, is there such a thing as consensual receipt of stolen property? There is. Or receipt of consensually stolen property. That's the question, right? Can you have receipt of consensually stolen property? Consensually stolen property meaning extortion or something like that. Exactly. And so in California, a lot is very clear. California is unique in the way that they look at theft. But in 2013, so the Verdugo-Gonzalez panel did not have the benefit of Bell versus Fybush cited in the AOB at Section 1.33 and in the reply brief at page 36. That case was decided by the California Court of Appeal in 2013 and clearly holds that Section 496A, the receipt of stolen property offense, can be violated by false pretense. In addition, the California Criminal Jury Instructions 1705. So the answer is in California you can have – is that about theft or about receipt of stolen property? Receipt of stolen property. Right, so you can have receipt of consensually stolen property, basically. Yes. And the question is, is that contrary to the federal statute? Because it says stolen property. It doesn't say theft. The parentheses. I understand the argument that it's only a subset of theft. So my first argument is that the government has waived this argument because it wasn't raised below. We have a conditional plea and the government initialed where it says preserved issues. And I thank my friend for including the supplemental excerpts of record, which shows what they argued. They never – they didn't argue that. And so this court should reject their novel construction of the theft statutes. And I think if you – Corona Sanchez really answers the question on what a generic theft offense is, and the Supreme Court has talked about it. It requires without consent. Do you want to talk briefly about the – what I guess is tantamount to a prejudiced question, i.e., the 212C, the plausibility of him receiving 212C relief? Because that's ultimately what we're talking about. Is that right? Sure. Well, it's not ultimately what we're talking about. It's the alternative argument, which is that he wasn't advised. And he clearly wasn't advised. But the question is, does he have any plausible – Okay. So assuming that somehow the court finds that the theft offense is an aggravated felony – and before I answer the court's question, I'd also like to say that Verdugo-Gonzalez did not address the overbreadth argument that's raised here. And so for that other reason, it's not binding. In what sense? I'm sorry. So Verdugo-Gonzalez had one single argument that was raised about aiding and abetting, I believe, and – or accessory after the fact. And that was the only issue in that case. They did not look at whether or not the statute was overbroad. And so for that very important reason, Verdugo-Gonzalez is not binding on this court. As far as equities, Mr. Banuelos had the ability to get relief because between 1989 and 1995, 51.5% of 10,000 petitions were granted, and that's – the United States Supreme Court recognized that in St. Cyr itself. In fact – Your client – do you – I can't remember from your brief. Do you agree that your client needs to meet that somewhat more demanding standard in light of his criminal history? I don't, but I do argue that equities under that – even under that standard, he meets it. Well, I just think that's a really hard argument for you to make because – I'll submit on that then. I mean – I just mean, you know, yeah, there are some equities, but it's not – it doesn't seem like it's out of the ordinary. It's just kind of the standard hardship that would be posed, right? He doesn't even have – as I remember, doesn't even have any kids of his own here. His parents are both deceased. It's mainly his – Well, not in – so we have to look back in 2002. So in 2002 – so he came here in 1972 when he was 12 years old. He became a legal permanent resident. His entire family and his mother's entire family came to the United States. But even as of 2002, what do we – we have, like, the brothers, right? Two brothers, two sisters, maternal aunts and uncles, over 30 cousins. And in 1995, he had rehabilitated himself. So he had those prior convictions. All of his recent convictions are 1326s. But he had turned his life around. He was counseling. You know, he found God and was counseling his brothers. His brothers also had problems, and he was helping them. So they relied on him. He helped care for his two brother Aldo's two daughters, and he found work and was employed installing carpeting. And that's all great, but that's just kind of ordinary. It's not extraordinary in any sense, right, in terms of the hardship that would be posed to the folks left behind? It was certainly a hardship for his brothers and his brothers' families because of the support that he was helping them avoid using alcohol and controlled substances. So they fell back into that. And so it had a devastating effect on his family. Okay, thank you very much. Thank you. And we'll give you a minute to rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Mark Ray for the United States. Can I ask you just to start with the Flores case that you flagged in a footnote in, I don't know if it was you, but in the government's brief. What's the status of that? Because the lengthy discussion we had about whether the receipt of stolen property conviction counts or not as an aggravated felony, my understanding was that Flores was going to decide that issue. Is that your understanding? What can you tell us about that? That is my understanding as well. And the gentleman, my colleague, who wrote this brief, he argued that a year ago. And so it has been pending. There was supplemental briefing. And it's possible that Judge Reinhart, my memory's not perfect, he may have been on that panel. And then when he passed – Was he or wasn't he? I think he was, yeah. So maybe that's why it's taken a little longer, too. But, yeah, they've had supplemental briefings. So I don't know. And the issue there is essentially the status of, for Judge Gonzales, the same problem? Correct. And Melilla and all that? Yes. And also, you know, there's a BIA decision, Alde, Hernandez, and Matter of Cardeal. The BIA has found that 496 is still categorical. And so, yes, that issue, I don't – I mean, maybe to conserve the Court's resources, I won't reiterate. I didn't focus on it because I just thought we were going to be bound by whatever this other panel does. So I just wanted to confirm if that's your understanding as well. Exactly. And, you know, the only thing I can say now, at least, in response to some of the arguments that were made this morning, I mean, as we stand here today, Verdugo-Gonzales is still the binding law of the circuit. And as far as my opponent's argument that somehow it's clearly reconcilable with Cronus Sanchez, I would point out Cronus Sanchez, I believe, was decided in 2001 or 2002. Verdugo-Gonzales was decided in 2009. It wasn't a receipt of solemn property case, was it? And it was not, exactly. I think it was petty theft with the prior. So, you know, and like – as Your Honor pointed out. I can tell Verdugo – he also said that Verdugo-Gonzales was an aiding and abetting case, but I think it was only secondarily an aiding and abetting case. It first did decide the question of whether the receipt of solemn property is a generic offense or not. And then it went on to the aiding and abetting. That's my understanding as well, Your Honor. But if we then assume – I mean, unless Flores comes out with something different, that would be the government's best argument for removability's charge for the 2002 removal. And then there was already discussion as far as – Are you still making this argument that it's 2005 because there was some other crime that wasn't charged? We could look to that? I mean, it's there, Your Honor. I know it's not – It was there. I'm asking you whether you really believe it. I will agree it's not the strongest argument. Because I know on direct appeal the government's aware of cases like Chowdhury and the other ones. This is a collateral attack, and maybe it hasn't been decided. But I will acknowledge that it's not. Is there something – that's the only question I really had for you today was – because it seemed to me the ultimate question is whether that underlying removal order was valid or not. And so if we have cases that say on direct review it would have been invalidated, I don't know how – just because this is a collateral attack, how do you get to suddenly – I don't know. It just seems an on-odd argument. So do you have something more? Maybe just briefly, Your Honor. I think the one thing is even if on collateral review a case is found no longer to be an aggravated felony in light of intervening authority, I know that there was a footnote even in the Aguiar-Rios decision that it doesn't change the finality for immigration purposes until the defendant moves to reopen. But other than that, I don't think I would – I'll submit on what we have. But then I guess the only other thing I wanted to say briefly about prejudice, if this Court does end up sustaining or at least finding that the 2002 removal was valid for the 496, yes, there's no question that 212C wasn't advised, but we do feel strongly that it would have been subjected to that heightened standard. This Court has numerous cases. The BIA has numerous cases. The heightened standard, which requires the showing of unusual or outstanding equities, is triggered by either a serious drug offense, a single serious crime, or a succession of criminal acts. Here you have the assault with a deadly weapon or great bodily injury, plus you have sexual battery, obviously individually very serious, plus you have the fact that he had six felonies, which is definitely a pattern. So when one looks under that lens, I think the cases that we cite, it's very rare that aliens were ever able to overcome that standard. And as far as the statistic that my opponent pointed out, yes, it's true that there is that statistic. The Supreme Court referred to it in St. Cyr about maybe 51 percent of people getting 212C. But as the Tenth Circuit pointed out in the Ambon case of Aguiar Tello, which is cited in our briefs, that statistic doesn't break down how many of those aliens were subject to the heightened standards. So for that reason, we don't believe that that's sufficient to show prejudice. And with that, the government would submit. Thank you very much. What is your view of our situation given the Flores case? So the case was fully briefed October 2017. But then we had the unfortunate passing of Judge Reinhart. Judge Murguia replaced Judge Reinhart on April 10th of this year. So it has been pending. It has priority and the issues are the same. And so there's not a whole lot of point to our troubling ourselves. Is that right? Now that I know how it works as far as priority, because I didn't know if they go first. Okay. So if they go first, then their holding will control this case. The conclusion of what we do is we suspend submission of this case. Vacate submission. Or don't submit it. Just never submit it. Right. So I would then just want to briefly address. So if Flores comes out the way I think it should, then there is no prejudice analysis and we don't get to, I mean, this court's case, Al-Matarab, that you decided, Your Honor, in 2009. And then there's a list of 1326 cases where prejudice is inherent if the person was removed despite not being removable. And so he wasn't removable as charged and so. Oh, I understand that. Of course that's true. And then just to clarify, I'm not arguing that Miller v. Gammie applies because of Corona Sanchez. I'm arguing that Miller v. Gammie applies because. We understand that. But it just isn't spot on is the problem. Okay. Okay. Thank you very much. Thank you very much. Thank you both for your useful arguments. We will submit the case of United States v. Malas Haro. The next case is United States v. Grigsby. And just for planning purposes, we will take a brief break after that.
judges: Fisher, Berzon, Watford